IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 04-cv-01263-PSF-MEH

ROBERT M. FRIEDLAND,

    Plaintiff,

v.

TIC – THE INDUSTRIAL COMPANY and
GEOSYNTEC CONSULTANTS, INC. f/k/a GEOSERVICES, INC.,

    Defendants.

_____

**ORDER ON TRAVELERS' MOTION TO QUASH SUBPOENA**
_____

Interested Party Travelers Indemnity Company has filed a Motion to Quash Subpoena Issued to Zeeb & Co. [Docket #125]. The matter is briefed and has been referred to this Court [Docket #134]. Oral argument would not materially assist the Court in adjudicating this motion. For the reasons stated below, the Court **grants** the Motion to Quash Subpoena as specified herein.

**I.    Facts**

Plaintiff filed this lawsuit seeking contribution from Defendants for monies he paid to the EPA to settle a CERCLA lawsuit arising from his operation of the Summitville Mine. Plaintiff has previously sued other parties involved in the Summitville Mine and has received varying amounts of contribution.

For discovery relating to the alleged damages in this case, Defendants sought information concerning Plaintiff's other lawsuits, including the amounts recovered from other parties and the cost to Plaintiff, both of settlement and defense, of his CERCLA lawsuit. Defendant GeoSyntec has learned that the CPA it retained in this case, Michael Zeeb, was retained by Travelers in a previous

case brought by Plaintiff to analyze the data relevant to Plaintiff's cost of defense in the CERCLA lawsuit. In the previous lawsuit, Travelers retained Mr. Zeeb's Company, Zeeb & Co. ("Zeeb"), to analyze Plaintiff's legal fees and costs. Zeeb then compiled summaries of this information to be reviewed by Travelers' expert who was listed to testify as to the reasonableness of these fees and costs.

After learning that these reports existed, GeoSyntec first requested and then subpoenaed Zeeb's file on Travelers' lawsuit. The subpoena requests: (a) all documents provided to Zeeb in the Travelers' case, (b) all electronic images, (c) all summaries, spreadsheets, or databases, and (d) all expert reports or summaries of opinion.

Travelers filed the instant Motion to Quash as an interested party arguing that the documents sought are the protected work product of an unretained expert and that GeoSyntec cannot establish undue hardship sufficient to overcome this protection. In response, GeoSyntec asserts that Travelers failed to provide an adequate privilege log, that the work-product doctrine applies only to parties in the instant case, that the need for protection ended when Travelers case was settled, and that any privilege was waived when Travelers listed Zeeb's report as the basis for its legal expert's opinion on the reasonableness of the attorney's fees. Travelers' reply argues against waiver because the case settled before its expert completed a report or testified, and Travelers' reply attaches a detailed privilege log.

## II. Discussion

### A. Standing

GeoSyntec argues that Travelers does not have standing to assert work-product protection because it is not a party to this lawsuit. Rule 26(c) limits standing to "parties or the person from whom discovery is sought." *SEC v. Dowdell*, 144 Fed. Appx. 716, 722 (10th Cir. 2005). However,

Rule 45 contains no such requirement. *Id.* The Court finds, therefore, that Travelers can properly assert both its rights in the expert opinions for which it paid as well as the rights of the unretained expert whose opinions are at issue. Because the Court concludes that Rule 45(c)(3)(B)(ii) precludes the disclosure of the majority of the material sought, its analysis of Travelers' rights under the work-product doctrine is limited.

### B. Application of Rule 45(c)(3)(B)(ii)

Rule 45 of the Federal Rules of Civil Procedure, governs the Court's ability to quash or modify a subpoena issued against an unretained expert as follows:

> If a subpoena . . . requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party . . . the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

Fed. R. Civ. P. 45(c)(3)(B)(ii). This exception protects the "intellectual property of the non-party witness; it does not apply to the expert retained by a party, whose information is subject to the provisions of Rule 26(b)(4)." Fed. R. Civ. P. 45(c)(3)(B)(ii) advisory committee's note. The purpose of this rule is to protect experts from being required to provide expert advice or assistance without proper compensation. *Cable v. Weinman*, 233 F.R.D. 70, 76 (D. Mass. 2006). As the Advisory Committee notes explain, "A growing problem has been the use of subpoenas to compel the giving of evidence and information by unretained experts. Experts are not exempt from the duty to give evidence, . . . but compulsion to give evidence may threaten the intellectual property of experts denied the opportunity to bargain for the value of their services." Fed. R. Civ. P. 45(c)(3)(B)(ii) advisory committee's note. Thus, a party seeking disclosure of information protected

by this provision must meet a standard that "is the same as that necessary to secure work product under Rule 26(b)(3)." *Id.*

In the present case, GeoSyntec seeks disclosure of material within the possession of its retained expert, which was assembled and analyzed by Zeeb as a retained expert for Interested Party Travelers in a separate lawsuit. Although Zeeb is not technically an unretained expert (in that GeoSyntec has retained Zeeb to complete an analysis similar to that provided by Zeeb for Travelers), the relevant material is *not* part of Zeeb's file in this lawsuit and, most importantly, is not subject to the provisions of Rule 26(b)(4). The information at issue was compiled prior to GeoSyntec retaining Zeeb and was not prepared at the direction of a party to this lawsuit.

To ignore the protection Zeeb would have received over his formerly completed work product simply because GeoSyntec has now retained him in the current lawsuit would be to subvert the intention of Rule 45(c)(3)(B)(ii) and deny Zeeb the right to bargain for the value of the services he has previously performed. *E.g.*, *Statutory Comm. of Unsecured Creditors v. Motorola, Inc.*, 218 F.R.D. 325, 326 (D.D.C. 2003) ("In a society where knowledge is so valuable, there is something unfair about the courts permitting their processes, such as the issuance of a subpoena, to destroy that market in order to take for free the product of an individual's diligence, research, and expertise."). The Court, therefore, concludes that the material sought is subject to the requirements of Federal Rule 45(c)(3)(B)(ii).

### C. Scope of Protection under Rule 45(c)(3)(B)(ii)

Having found Rule 45(c)(3)(B)(ii) applicable to this case, the Court must now determine the extent of protection granted by Rule 45 and whether GeoSyntec has met its burden to overcome this protection. First, Rule 45(c)(3)(B)(ii) applies to an un-retained expert's opinion or information resulting from the expert's study if the information does not simply describe specific events or

occurrences in dispute. Fed. R. Civ. P. 45(c)(3)(B)(ii). Here, Section (a) of the subpoena broadly requests "all documents provided to you in the Travelers' Case," and section (b) seeks "all electronic images." GeoSyntec argues that much of this material is simply Plaintiff's billing records and, as such, constitutes unprotected records of specific events in the dispute. To the extent that GeoSyntec seeks copies of Friedland's legal bills, these documents are unprotected and should be produced provided "that the person to whom the subpoena is addressed will be reasonably compensated." Fed. R. Civ. P. 45(c)(3)(B)(ii). Travelers indicates that 6,727 pages fall into this category and requests compensation for their production at the rate of ten cents per page. The Court finds this to be reasonable and will modify the subpoena to require production of these documents, provided that GeoSyntec compensates Zeeb at the rate of ten cents per page for these documents.

Sections (c) and (d) of the subpoena request all summaries, spreadsheets, databases, and expert reports, summaries, and opinions. This information is clearly the "intellectual property" of Zeeb, regardless of its relevance to the instant matter. *See* Fed. R. Civ. P. 45(c)(3)(B)(ii) advisory committee's note; *Statutory Comm. of Unsecured Creditors*, 218 F.R.D. at 327 (applying Rule 45 protection to past opinion of expert). Thus, GeoSyntec must establish undue hardship before the Court will require production of these materials.

### D.     Undue Hardship

For material protected under Rule 45(c)(3)(B)(ii), GeoSyntec bears the burden of establishing "a substantial need for the material that cannot be otherwise met without undue hardship." Fed. R. Civ. P. 45(c)(3)(B). To establish undue hardship, "A party must show that the substantial equivalent cannot be obtained through other means. Where a witness is unavailable or where contemporaneous statements have been made that cannot be reproduced, courts will often order the production of work product." *Connelly v. Dun & Bradstreet, Inc.*, 96 F.R.D. 339, 342 (D. Mass. 1982). Although

expense alone is generally not sufficient to establish undue hardship, unusual expense may constitute undue hardship. *In re Int'l Sys. & Controls Corp. Sec. Litig.*, 693 F.2d 1235, 1241 (5th Cir. 1982) (finding that requiring a second investigation costing approximately $1.5 million constituted undue hardship).

Here, GeoSyntec argues that Travelers' refusal to allow production of these documents "seeks to force Geosyntec to 'reinvent the wheel' by having Mr. Zeeb reexamine the hundreds of billing statements and invoices he examined before, and re-create his prior analyses." Response at 5. Conversely, Travelers contends that the hardship of paying Zeeb and other experts to analyze Friedland's legal fees and costs is not "undue" simply because Travelers has previously paid for this service. Travelers further argues that GeoSyntec should not receive without cost the benefit of an expert opinion for which Travelers has paid. The Court agrees. The circumstances in this case do not rise to the level of undue hardship sufficient to allow the taking of an unretained expert's intellectual property. *E.g.*, *Statutory Comm. of Unsecured Creditors*, 218 F.R.D. at 327 (holding that the cost of retaining the expert to produce a similar report did not constitute undue hardship because "[expert's] decision not to turn over her reports for the mere cost of reproducing them hardly subjects Motorola to a substantial hardship").

### E.    Work-Product Doctrine

Although unnecessary for the decision reached above, the Court will address the arguments raised by counsel regarding the application of the work-product doctrine. Initially, the Court notes that the work-product doctrine set forth in Rule 26(b)(3) does not apply in this matter because, as GeoSyntec points out, Travelers is not a party to this lawsuit. *See Ricoh Co. v. Aeroflex Inc.*, 219 F.R.D. 66, 69 (S.D.N.Y. 2003). Nevertheless, the work-product doctrine established in *Hickman v. Taylor*, 329 U.S. 495 (1947), does extend beyond the scope of Rule 26(b)(3), as Travelers

contends, and, in fact, provides protection similar to that provided under Rule 45(c)(3)(B)(ii). *See* Fed. R. Civ. P. 45(c)(3)(B)(ii) advisory committee's note.

Moreover, the Court finds that Travelers and Zeeb have not waived their rights under the work-product doctrine simply by providing Zeeb's report to a retained expert in another lawsuit who never in fact testified. *Durflinger v. Artiles*, 727 F.2d 888, 891 (10th Cir. 1984) (requiring special showing to allow discovery against expert who plaintiff initially listed as a testifying witness and later informed defendant that he would not testify). Waiver does occur when an expert will rely on work-product at trial. *Boring v. Keller*, 97 F.R.D. 404, 407 (D. Colo. 1983). In fact, "Rule 26(b)(4) provides that a party may discover 'facts known and opinions held by experts,' so that a party may prepare for cross-examination and impeachment of any prospective witness." *Id.* at 407-08.

However, such is not the case before this Court. Zeeb's work is not subject to Rule 26(b)(4) in this case, and similarly the purpose of disclosure under Rule 26 will not be served by disclosure of this information. The fact that the previous lawsuit settled in no way ends the need for protection under the work-product doctrine, as contemplated in *Hickman v. Taylor*, and particularly not as addressed in Rule 45(c)(3)(B)(ii). *See Ross v. Burlington N.R. Co.*, 136 F.R.D. 638, 639 (N.D. Ill. 1991) (holding that initial disclosure of name of expert and subject matter of testimony does not constitute waiver of privilege if a party later determines that the expert will not testify at trial).

### III.    Conclusion

Accordingly, for the reasons stated above, it is hereby ORDERED that Interested Party Travelers Indemnity Company's Motion to Quash Subpoena Issued to Zeeb & Co. [Docket #125] is **granted** as specified. Specifically, the subpoena is modified to cover only the approximately 6,727 pages of material consisting of either Friedland's legal bills or other unprotected material. GeoSyntec is to compensate Zeeb at the rate of ten cents per page for producing this material. All requests for

attorney's fees related to this motion are denied.

Dated at Denver, Colorado, this 5th day of September, 2006.

BY THE COURT:

s/ Michael E. Hegarty
Michael E. Hegarty
United States Magistrate Judge